UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SENATOR RON JOHNSON,
individually and in his official capacity
as a United States Senator,
5171 Island View Drive
Oshkosh, WI 54901

Case No.   13-CV-

and

BROOKE ERICSON,
302 North Carolina SE
Washington, DC 20003

Plaintiffs

v.

U.S. Office of Personnel Management, and
KATHERINE ARCHULETA, in her capacity as
Director of the Office of Personnel Management,
1900 E. Street, NW
Washington, D.C. 20415

Defendants.

---

COMPLAINT

---

Plaintiffs, Senator Ron Johnson ("Senator Johnson") and Brooke Ericson, by and through their undersigned counsel, bring this Complaint against the Defendants, U.S. Office of Personnel Management and Katherine Archuleta, in her official capacity as Director of the United States Office of Personnel Management.  In support of this Complaint, Plaintiffs allege as follows:

*Introduction*

1.	The United States Office of Personnel Management ("OPM") has adopted a final rule which is intended to permit OPM to provide Members of Congress and certain of their employees with group health insurance through participation in a so-called Small Business Health Options Program ("SHOP") Exchange established pursuant to the Patient Protection and

1

Affordable Care Act ("ACA") (the "OPM Rule"). A copy of the OPM Rule is attached hereto as Exhibit A. The OPM Rule purports to amend and expand the regulations relating to the Federal Employees Health Benefits Program ("FEHBP") (5 U.S.C. §§ 8901-8914; 5 C.F.R 890.101-890.1308), the program that provides group health insurance for other federal employees, and that has and would do so for these congressional employees if it had not been superseded by the ACA requirement that they purchase insurance through an ACA Exchange.

2. Section 1312(d)(3)(D) of the ACA provides that as of January 1, 2014, the only health insurance plans that Members of Congress and their staffs can be offered by the federal government are health insurance plans "created under [the ACA]" or "offered through an Exchange" established under the ACA. Section 1312(d)(3)(D) was passed so Members of Congress and their staffs would be subject to the ACA in the same way as Members' constituents.

3. But in fact, the OPM Rule does not treat Members of Congress and their staffs like the Members' constituents. Instead, it puts them in a better position by providing them with a continuing tax-free subsidy from the federal government to pay a percentage of the premiums for health insurance purchased through an ACA Exchange, just as they had received under the FEHBP. OPM has limited this subsidy to 112 Gold-tier plans on the D.C. SHOP Exchange. Constituents who purchase plans through an exchange may not receive pre-tax subsidies from their employers.

4. The legal problem is that the OPM Rule violates the ACA and the federal statutes that apply to the FEHBP. The health plans offered through the exchanges are not OPM-negotiated large group health insurance plans. Only OPM-negotiated and contracted-for plans can be offered to federal employees through the FEHBP. Furthermore, the designated Exchange

plans do not meet the statutory requirements for FEHBP plans administered by the OPM. In addition, the federal government does not meet the definition of a small business and, as a result, is not eligible to participate in a SHOP Exchange. Neither the ACA nor any other applicable statute or rule permits the OPM to provide group health insurance to government employees who do not participate in the FEHBP. Finally, the OPM Rule violates the Equal Protection Clause of the United States Constitution in that it treats Members of Congress and their staffs differently than other similarly-situated employees who obtain insurance coverage pursuant to the terms of the ACA. No other employees of large employers are able to purchase insurance through small business exchanges with tax free subsidies from their employers.

5. As a result, the OPM Rule exceeds the authority granted to the OPM. The OPM Rule is unlawful and defeats the will and intent of Congress as expressed in the ACA and the statute under which OPM administers the FEHBP. As such, the OPM Rule is arbitrary, capricious, and not in accordance with law. Further, the OPM Rule is in excess of the OPM's statutory jurisdiction and authority, and was adopted without sufficient notice and comment under the APA.

6. Accordingly, plaintiffs request a declaration by this Court that the OPM Rule is unlawful and void under the Administrative Procedure Act, 5 U.S.C. §§ 701 through 706 ("APA").

*Jurisdiction and Venue*

7. This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706 and 8912.

8. This Court is authorized to grant declaratory and injunctive relief under 5 U.S.C. §§ 701 through 706, and 28 U.S.C. §§ 2201 and 2202.

9. Venue is proper under 28 U.S.C. § 1391(e)(1).

*Parties*

10. Senator Johnson is a citizen of the United States and the State of Wisconsin. He resides in Oshkosh, Wisconsin and represents the State of Wisconsin in the U.S. Senate, serving on the committees on the Budget, Commerce, Science and Transportation, Foreign Relations, Homeland Security and Governmental Affairs, and Small Business and Entrepreneurship. Brooke Ericson is a citizen of the United States and a resident of the District of Columbia. She is Senator Johnson's Legislative Counsel and is one of the Congressional staff employees affected by the OPM rule. In addition, Ms. Ericson was required to participate in identifying those members of Senator Johnson's staff covered by Section 1312(d)(3)(D) of the ACA as alleged in paragraph 12 below.

11. Plaintiffs have suffered a legal wrong as a result of the OPM Rule and are adversely affected and aggrieved by the OPM Rule.

12. The OPM Rule places new administrative burdens on Senator Johnson and his staff, including Ms. Ericson, to comply with the Rule. Among other things, the OPM Rule imposes the responsibility on Senator Johnson to make a legal and factual determination as to which federal government employees on his staff are covered by Section 1312(d)(3)(D) of the ACA and which are not. This requirement is solely the result of the OPM Rule and not required by the ACA. Further, the OPM Rule requires him to make this determination annually for each such employee, and in 2013 he was required to do so within a 29-day window of time. The OPM Rule provides no guidelines or standards for making this determination.

13. The OPM Rule also requires Senator Johnson and Ms. Ericson to be complicit in conduct which they believe violates federal law, including; (1) permitting the government to join

4

Case 1:14-cv-00009-WCG    Filed 01/06/14    Page 4 of 19    Document 1

and Members of Congress and their staffs to obtain group health insurance through a SHOP Exchange – an insurance exchange that by the specific terms of the ACA cannot be made available to large businesses like the Federal government, (2) permitting the federal government to provide group health insurance to Members of Congress and their staffs who by law are required to obtain their health insurance on an ACA exchange in which they are eligible to participate, and (3) attempting to accomplish by rule, and without sufficient notice and comment, a result that is inconsistent with federal statutes.

14. The OPM Rule not only places a substantial administrative burden on Senator Johnson and his staff, and requires them to be complicit in conduct that violates federal law; it also harms them because it directly affects the benefits which are available to them as part of their compensation. In addition, the OPM Rule directly affects plaintiffs' decision-making regarding health insurance coverage because the OPM subsidy applies only to certain designated plans offered through the DC SHOP Exchange.

15. It also harms Senator Johnson's credibility and relationships with his constituents. The OPM Rule results in Members of Congress and their staffs being treated in a way such that they are not affected by the ACA in the same way that many of their fellow citizens are affected. The OPM Rule thus places Members of Congress and their staffs in a privileged position that drives a wedge between Senator Johnson and his constituents and is exactly the opposite of what was intended when Congress passed Section 1312(d)(3)(D) of the ACA. It is a position that they do not desire and in which the ACA does not place them.

16. The Defendant, U.S. Office of Personnel Management, is an agency of the United States Government. Defendant Katherine Archuleta is the Director of the Office of Personnel Management. Defendant Archuleta is sued in her official capacity.

*General Allegations*

17. OPM administers the FEHBP under Chapter 89 of Title 5 of the U.S. Code, and in that capacity OPM contracts with carriers to offer large group health insurance to federal employees. OPM also calculates the amount of FEHBP health insurance premiums the government will pay for each employee and the employee's resulting share of such premiums. Nowhere is OPM given authority to authorize the payment of government funds for a federal employee's health insurance (in whole or in part) except in connection with a large group plan that is approved by and contracted for by OPM under Chapter 89.

18. When Congress passed the ACA it resolved that Members of Congress and their staffs should be treated the same way that most private citizens are treated by the ACA. Accordingly, the ACA requires that these particular federal employees obtain health insurance through an ACA exchange. The ACA sets up two different kinds of insurance exchanges in each state: (1) those that will offer coverage for individuals and their families; and (2) the SHOP exchanges that will offer group policies to small businesses and their employees. Employees who participate in the individual exchanges cannot buy group insurance policies and, although depending upon their income they may be entitled to a premium subsidy, cannot receive a tax-free employer subsidy for their premiums. Group insurance policies – which permit employers to subsidize part of the premium costs for their employees on a tax free basis – can be offered through a SHOP exchange, but SHOP insurance plans are limited to plans offered in the small business market and large employers cannot participate in a SHOP Exchange.

19. As a result of the ACA, Members of Congress and their staffs are facing the same problems that confront millions of their fellow citizens: having to buy exchange-approved individual or family health insurance policies that do not meet their needs and are more

6

expensive than what was available to them prior to the ACA. Congress knew, or certainly should have known, that the provision of the ACA requiring Members of Congress and their staffs to participate in the exchanges would mean that the covered employees would be unable to keep the large group health coverage they have today under the FEHBP.

20. Dissatisfied with this outcome, but not wanting to amend the ACA to revoke the provision that made them subject to the same rules that apply to everyone else, a "save" is being accomplished (with no political accountability) by way of a rule that "interprets" the federal statutes to mean something other than what they actually say. The Rule purports to authorize the federal government to join a SHOP Exchange that is limited to small businesses. The ACA defines small businesses as those with fewer than 100 employees. The federal government has millions of employees, and even Congress itself has more than 11,000 employees. Obviously, neither the federal government nor the Congress could possibly qualify as a small business under the ACA. OPM is bending the rules because many Members of Congress want to continue to obtain group health insurance, (or to make it available to their staffs) essentially tax free and at the government's expense, and they cannot do so under the clear terms of the ACA.

*Congressional Health Care Prior to the ACA*

21. Prior to the ACA, Members of Congress and federal legislative employees participated in the FEHBP, which is administered by the OPM. This included not only individuals who worked directly for Members of Congress, but also the staffs of congressional committees and leadership offices and employees of the various legislative branch support offices and agencies.

22. Under the FEHBP, employees pick the insurance coverage they prefer from a variety of large group plans that were negotiated and contracted for by the OPM. Generally, the

federal government pays approximately seventy-five percent of their insurance premiums, up to a maximum dollar amount. Employees are charged by way of a payroll reduction for the remaining premium amounts due.

23. FEHBP contributions toward the cost of health care coverage are tax free, giving participants the same tax treatment enjoyed by all other Americans with employer-sponsored group health insurance.

*Congress Intentionally Changed the Health Insurance Available to Members of Congress and Their Staffs as Part of the ACA.*

24. Although Congress has frequently exempted itself from the laws it imposes on others, it did not do so in the ACA.

25. As adopted by Congress section 1312(d)(3)(D) of the ACA provides as follows:

> (D) MEMBER OF CONGRESS IN THE EXCHANGE
> (i) REQUIREMENT – Notwithstanding any other provision of law, after the effective date of this subtitle, the only health plans that the Federal Government may make available to Members of Congress and their congressional staff with respect to their service as a Member of Congress or congressional staff shall be health plans that are –
> (I) created under this Act (or an amendment made by this Act); or
> (II) offered through an Exchange established under this Act (or an amendment made by this Act).

26. This provision makes clear that Members of Congress and their staffs will no longer be entitled to obtain their health insurance through the FEHBP, but will instead be required to obtain individual (or family) health insurance through an ACA Exchange. The ACA thus precludes Members of Congress and their staffs from continuing to participate in FEHBP insurance plans; the FEHBP is not created under the ACA, and the large group health benefits plans negotiated by the OPM cannot be offered through an ACA exchange.

27. During the creation of the legislative language that became the ACA, Congress considered a variety of proposals on this issue. Some of them would have left the FEHBP insurance (and employer contributions) in place for Members of Congress and their employees; others would not have.

28. While the House of Representatives was working on the proposed legislation (which included a public option) the House considered an amendment that would have required Members of Congress to give up their FEHBP coverage. However, House Democrats voted down that amendment. Had the House version become the final version of the law, Members of Congress and their staffs would still have access to the FEHBP. But the House bill was not the legislation ultimately signed into law; the Senate produced the version that became law.

29. The Senate Health, Education, Labor and Pensions (HELP) Committee was one of two Senate committees that drafted proposed language for the health care legislation. Among the amendments offered was Amendment 226, which would require that "Members of Congress and congressional staff shall enroll in a Federal health insurance program created under this Act, or in a Gateway [the name used then for what later was named an "exchange"] under this Act." The HELP Committee agreed to Amendment 226, and the language of this proposed amendment is substantially similar to the final version of Section 1312(d)(3)(D.

30. The second Senate Committee to propose pertinent language for this aspect of the proposed health care legislation was the Senate Finance Committee. Senators on that committee considered Amendment 328, which read:

> notwithstanding any other provision of law, beginning in 2013, Members of Congress and Congressional staff must use their employer contribution (adjusted for age rating) to purchase coverage through a state-based exchange, rather than using the traditional selection of plans offered through the Federal Employees Health Benefits Plan (FEHBP).

31. The Finance Committee adopted Amendment 328 and the final bill was reported

to the full Senate as S. 1796, America's Healthy Future Act of 2009. Thus, the final bill reported by the Senate Finance Committee included language that implemented the amendment and would have allowed Members of Congress and their staffs to continue to receive an employer contribution under the FEHBP. Specifically, S. 1796, Section 2231(3) provided that Members of Congress and Congressional employees would purchase their health insurance through an exchange, but it also provided that the employer contribution under Chapter 89 of title 5 would be paid to the insurer whose policy was purchased through the exchange rather than to the FEHBP insurer.

32. Neither of the two Senate bills reported out of committee was passed into law. Instead, Senate Majority Leader Harry Reid created a new bill that was largely an amalgam of the two reported bills. Because of the constitutional requirement that all revenue-raising bills originate in the House of Representatives, Senator Reid created his bill as an *amendment* to a House-passed bill, H.R. 3590. (H.R. 3590 had nothing to do with health care.) Senator Reid's draft bill replaced all the original House language with his proposed health care provisions and renamed the bill the Patient Protection and Affordable Care Act.

33. Senator Reid included language in his bill, in Section 1312(d)(3)(D), similar to what was in the HELP Committee bill as described above, rather than incorporating language from the Finance Committee bill. Under his language, Members of Congress and their staffs would have access to health care only through an Exchange and would not be eligible for the FEHBP.

34. On December 11, 2009, Senate Amendment 3178 was proposed to replace the provision that Senator Reid had adopted from the HELP Committee bill (Section 1312(d)(3)(D) in Senator Reid's bill) with the language from Section 1101(3) of S. 1796, the bill that adopted

10
Case 1:14-cv-00009-WCG Filed 01/06/14 Page 10 of 19 Document 1

the original committee amendment as reported by the Senate Finance Committee. Like the reported Finance Committee bill, the amendment would have allowed Members of Congress and their staffs to continue to use the employer's contribution previously made under the FEHBP to buy insurance through the ACA exchanges.

35. On December 23, 2009, the Senate adopted, by a vote of 60 to 39, a cloture motion to end debate on Senator Reid's bill. The next day, on Christmas Eve, the Senate voted, also 60 to 39, in favor of final passage. As a result, the Senate never voted on Amendment 3178.

36. The Senate had one more opportunity to change the language in Section 1312(d)(3)(D). On March 23, 2010, the Senate received another bill from the House, H.R. 4872, the Health Care and Education Reconciliation Act of 2010, which consisted of further amendments to the final version of H.R. 3590 that the President had just signed into law. The Senate then recommenced debate on this second installment of the health care legislation.

37. Senate Amendment 3564, containing language identical to that of the earlier floor Amendment 3178, was offered. Like Amendment 3178, this amendment would have allowed Members of Congress and their staffs to keep their FEHBP employer contributions and use them to buy coverage through an exchange. This amendment was also not adopted.

38. The language in Section 1312(d)(3)(D) remained and the provision was signed into law by President Obama as part of the final version of the ACA. The legislative history set forth above makes it clear that Congress intended the ACA to preclude Members and their staffs from purchasing insurance through the exchanges by using FEHBP contributions made to them or on their behalf.

*The OPM Rule*

39. On August 7, 2013, OPM proposed a rule that would provide premium support

subsidies to Members of Congress and their staffs who were to purchase insurance coverage on individual exchanges. A true and correct copy of the proposed OPM Rule is attached hereto as Exhibit B. After receiving extensive comments on the proposed rule, including comments from Senator Johnson, OPM adopted a significantly modified final rule on October 2, 2013. The final OPM Rule (Exhibit A) provides premium subsidies for Members of Congress and "congressional staff members" if they purchase designated health insurance plans on a SHOP Exchange.

40. The OPM Rule, among other things, through an amendment to 5 CFR §890.102, requires Members of Congress to determine whether a particular employee meets the definition of "congressional staff member" and to make such a determination on an annual basis. The OPM Rule does not provide any standards for making such a determination. For 2013, the determination had to be made prior to October 25, 2013. The amendment in the OPM Rule to 5 CFR §890.102 also purports to permit Members of Congress and their staffs to purchase health insurance through "an appropriate SHOP as determined by the Director [of OPM]."

41. The ACA provides for the creation of SHOP exchanges but limits participation in such exchanges to "qualified employers." 42 U.S.C. § 18032(f)(2)(A) defines qualified employer for purposes of the SHOP exchanges to be "a small employer that elects to make all full-time employees of such employer eligible for 1 or more qualified health plans offered in the small group market through an Exchange that offers qualified health plans." The HHS regulations implementing this section of the ACA make it clear that participation in the SHOP exchanges is limited to small employers:

> Employer eligibility requirements. An employer is a qualified employer
> eligible to purchase coverage through a SHOP if such employer--
> (1) Is a small employer;
> (2) Elects to offer, at a minimum, all full-time employees coverage in a
> QHP through a SHOP; and
> (3) Either--

> (i) Has its principal business address in the Exchange service area and offers coverage to all its full-time employees through that SHOP; or
> (ii) Offers coverage to each eligible employee through the SHOP serving that employee's primary worksite.

45 C.F.R. § 155.710(b).

42. The federal government has more than 100 employees and is therefore not a small employer for purposes of the ACA. *See* ACA § 1304(b)(2). In addition, the OPM Rule treats Members of Congress and their staffs differently than similarly situated employees of other large employers who lack employer provided coverage and must purchase insurance through an ACA exchange. No other employees of large employers are able to purchase insurance through small business exchanges with tax free subsidies from their employers. Moreover, the OPM Rule does not offer group insurance coverage through a SHOP Exchange to **all** federal employees (as required by 45 C.F.R. § 155.710(b)(2)), but only to those covered by the ACA provision that OPM is trying to evade. Thus, even if the federal government were a "small employer," it would not be a "qualified employer" for purposes of participating in a SHOP Exchange.

43. The administration has attempted to shoe-horn the federal government into being a "small employer" by having the Centers for Medicare and Medicaid Services ("CMS") issue a memorandum dated September 30, 2013 stating that the federal government is "eligible to participate in a SHOP regardless of the size and offering requirements set forth in the definition of 'qualified employer' in the Exchange final rule…," but the CMS cannot change the law as set forth in the ACA, including but not limited to ACA § 1304(b)(2), 42 U.S.C.A § 18032(f)(2)(A), and 45 C.F.R. § 155.710(b).

44. The OPM Rule, through an amendment to 5 CFR § 890.501, also purports to permit the federal government to participate in the SHOP exchanges in the same way that it

participates in the FEHBP, by financing the purchase of group health insurance for employees in the SHOP exchanges and using the same rules that it uses to determine employer and employee contributions to insurance premiums through the FEHBP. But the OPM lacks the statutory authority to make such contributions outside of the FEHBP.

45. The OPM Rule was originally published as a proposed rule on August 8, 2013. The proposed rule required covered employees to buy individual health insurance coverage through the **individual** exchanges and permitted OPM to make pre-tax contributions to their premium payments in the same proportion as the employer contribution to group policies under the FEHBP. During the comment period on the proposed rule, Senator Johnson submitted a written comment explaining that the proposed rule was unlawful. A true and correct copy of the Senator's comment as submitted to OPM is attached to this Complaint as Exhibit C.

46. After receiving Senator Johnson's comment and thousands of others, the OPM substantially rewrote the rule to provide that Members of Congress and their staffs were permitted to buy health insurance on a SHOP (rather than an individual) exchange even though that provision was not part of the proposed rule. This was a drastic change from the proposed rule and not a logical outgrowth of the proposed rule. The public never had the opportunity to provide comment on that part of the OPM Rule. The OPM's complete abandonment of its original proposal suggests that it may have concluded, as pointed out by Senator Johnson in his comment, that its proposal was in violation of both the ACA and the statutes governing the FEHPB. A new and different "fix" was then developed, but the rewritten rule simply creates new and different legal problems, including the fact that the OPM Rule violates the ACA by permitting the federal government to participate in a SHOP exchange, an ACA Exchange intended for and limited to small businesses.

*The ACA Provision Requiring Members of Congress and Their Staffs to Purchase Health Insurance Through an Exchange Does Not Apply to all Legislative Employees.*

47. The enacted language in Section 1312(d)(3)(D) applies to congressional staff "employed by the official office of a Member of Congress."

48. There are numerous employees of the legislative branch that serve in capacities other than as staff in the official offices of Members of Congress.

49. Thus, a determination must be made as to which congressional employees are covered by Section 1312(d)(3)(D) and which are not. The OPM Rule places the burden of making this determination on Members of Congress, such as Senator Johnson, and their staffs such as Plaintiff Ericson. For example, Senate Majority Leader Harry Reid has exempted his leadership staff from having to use the exchanges, whereas House Speaker John Boehner has placed his entire staff on the exchanges.

50. Under the OPM Rule, Senator Johnson and his staff must spend substantial time and effort to categorize each employee for which he is responsible and make a factual and legal determination as to whether each such employee is covered by Section 1312(d)(3)(D). The OPM Rule includes no guidelines or standards for making this determination. The OPM has no power to place such a burden on Senator Johnson and his staff.

*The OPM Rule Violates the ACA and Is Inconsistent With the Statute Under Which OPM Operates.*

51. Congress considered including in the ACA a provision that would have the same effect as the OPM Rule, *i.e.*, that Members of Congress and their staffs would continue to receive the FEHBP employer contribution for their purchases of insurance through the ACA exchanges. Those proposals were not adopted.

52. Under 5 U.S.C. § 8902, OPM negotiates benefits and rates with qualified carriers and enters into contracts with those carriers for large group insurance coverage. There are

15

contracting guidelines that OPM must follow, including specifying that the rates charged be "consistent with the lowest schedule of basic rates generally charged for new group health benefit plans issued to large employers," and that adjustment to rates at renewal be "consistent with the general practice of carriers which issue group health benefit plans to large employers." *See* 5 U.S.C. § 8902(h)(i).

53. Under 5 U.S.C. § 8906, OPM calculates the amounts of the government and employee shares of the costs of each enrollment in a group plan under Chapter 89 and authorizes the employing agency to pay the government's share. Nowhere in Title 5 is OPM given authority to process or make a payment relating to an employee's enrollment in a health insurance plan that is not "under this chapter" (Chapter 89)—that is, to pay the government contribution to a plan that is *not* one of the large group plans contracted for by OPM.

54. Under 5 U.S.C. § 8909, the "Employees Health Benefits Fund" is created within the Treasury of the United States and to be operated by the OPM. The contributions of the federal government and by employees are paid into such fund and the fund is available for payments "to approved health benefits plans." A health insurance policy purchased through a SHOP Exchange is not an "approved health benefits plan" under Chapter 89 of title 5.

55. Section 1312(d)(3)(D) provides that, as of January 1, 2014, the only health insurance plans that are available to Members of Congress and their staffs are health insurance plans offered through an Exchange established under the ACA. Those plans are not OPM-negotiated and contracted group plans. Furthermore, because plans purchased through a SHOP Exchange are for the small employer market, they do not meet the rate and benefit requirements for FEHBP large group plans in 5 U.S.C. § 8902.

56. Because an Exchange plan is not an OPM-negotiated and contracted large group plan, OPM lacks any authority to authorize payment for, authorize a subsidy for, or otherwise provide for an Exchange plan.

57. As the legislative history shows, Congress had opportunities as the ACA made its way through the legislative process to ensure the continuation of FEHBP employer subsidies for health insurance coverage for Members of Congress and staff, if that is what it intended to do. Yet Congress, with support from the President, enacted the ACA with language that explicitly requires Members of Congress and staff to purchase coverage in the new exchanges, which means that as a matter of law they are not eligible for the FEHBP employer subsidies.

58. Congress could keep the current health coverage in place for itself and its staff by repealing Section 1312(d)(3)(D). However, that is a decision for Congress to make and not within the power of the OPM.

*Claim for Relief*

59. For all of the foregoing reasons, OPM is without lawful authority to authorize federal employees to participate in a SHOP Exchange and without authority to grant the FEHBP employer subsidies to Members of Congress and their staffs who, as a matter of law, are required to obtain their health insurance through an ACA exchange.

60. The Declaratory Judgment Act provides that, in a case of actual controversy within its jurisdiction, a United States court may declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C. § 2201(a).

61. An actual controversy exists between plaintiffs and the Defendants, in which the parties have genuine and opposing interests, interests that are direct and substantial, and of which a judicial determination will be final and conclusive.

62. The Administrative Procedure Act ("APA") provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA also provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704.

63. The APA further provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be," *inter alia*, "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2).

64. The OPM Rule is unlawful and should be set aside under APA § 706(2). Among other things, the OPM Rule is arbitrary, capricious and otherwise not in accordance with law, is in excess of OPM's statutory jurisdiction, and was adopted without observance of procedure required by law. The OPM rule is inconsistent with the ACA, beyond the power of the OPM, and passed without the opportunity for comment on the section of the rule which authorizes the federal government to participate in a SHOP Exchange. The OPM Rule violates the Equal Protection Clause of the United States Constitution in that it treats Members of Congress and their staffs differently than other similarly-situated employees who obtain insurance coverage under exchanges established under the ACA.

WHEREFORE, plaintiffs respectfully request that the Court:

A. Declare that OPM is without lawful authority to authorize federal employees to participate in a SHOP Exchange and without authority to grant the FEHBP employer subsidies to

Members of Congress and their staffs who, as a matter of law, are required to obtain their health insurance through an ACA exchange.

B. Declare that the OPM Rule is unlawful and should be set aside under APA § 706(2) and the United States Constitution.

C. Enjoin the Defendants and any other agency or employee acting on behalf of the United States from enforcing and implementing the OPM Rule.

Dated: 1/3/14

Respectfully submitted,
WISCONSIN INSTITUTE FOR LAW & LIBERTY,
Attorneys for Plaintiffs

Richard M. Esenberg, WI Bar No. 1005622
414-727-6367; rick@will-law.org

MAILING ADDRESS:
1139 East Knapp Street
Milwaukee, WI 53202-2828
414-727-9455
FAX: 414-727-6385